**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Sheila TAYLOR, Defendant–Appellant.**

No. 01–4207.

United States Court of Appeals,
Tenth Circuit.

June 4, 2002.

Before TACHA, Chief Judge, EBEL and LUCERO, Circuit Judges.

## ORDER AND JUDGMENT*

Sheila Taylor appeals the sentence imposed by the district court following her plea of guilty to one count of embezzlement by a bank employee in violation of 18 U.S.C. § 656. She contends that the district court erred in its determination that the conduct of her codefendant was fully attributable to her, and that the court abused its discretion in its determination that she must pay restitution to her victim. We exercise jurisdiction under 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291, and affirm.

## I

Taylor was employed as a bank teller by Community First National Bank of Rich-

field, Utah, for nearly eight years prior to engaging in the activities that eventually led to her arrest. Sometime between April 1998 and October 1998, Taylor and another teller—codefendant DonNetta Jorgenson—began embezzling cash from the bank. The unsophisticated scheme worked by having Taylor write out a personal check and then give it to Jorgenson, who in turn would deliver cash from the bank in payment of the check. Instead of sending the check through the clearing process to be debited from Taylor's account, however, Jorgenson would simply hold onto it. Taylor performed the same service for Jorgenson. To conceal their diversions, the codefendants would tear the notations of their suspect transactions from the teller tapes and then reconnect the tapes. An FBI investigation determined that Jorgenson had diverted a total of $27,200 from her teller drawer, and that Taylor had diverted $14,398 from her drawer. In a "Stipulated Statement of Facts" appended to the "Statement by Defendant in Advance of Plea of Guilty," Taylor "admit[ted] to embezzling monies from Community First National Bank," and "agree[d] that the sum not to exceed of $41,398 is an appropriate sum to be ordered as restitution."[1] (R. Doc. 14 Attach. at 1).

Prior to sentencing, a presentence report ("PSR") was prepared. The PSR recommended that, pursuant to § 2B1.1(b)(1)(H) of the United States Sen-

---

* The case is unanimously ordered submitted without oral argument pursuant to Fed. R.App. P. 34(a)(2) and 10th Cir. R. 34.1(G). This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The Court generally disfavors the citation of orders and judgments; nevertheless, an order and judment may be cited under the terms and conditions of 10th Cir. R. 36.3.

1. We note that this tortured grammar is the result of the handwritten insertion of the phrase "not to exceed" into the pre-typed document. We also note that neither party suggests that $41,598 (the total amount of money apparently missing from Taylor's and Jorgenson's teller drawers) would have been a more appropriate benchmark for the bank's losses than the $41,398 figure adopted in Taylor's stipulation.

tencing Guidelines,[2] seven points should be added to Taylor's base offense level because the bank's loss exceeded $40,000 but was less than $70,000. Although Taylor conceded that up to $41,398 would be appropriate for restitution, she nevertheless contested the PSR's conclusion that she was criminally responsible for the full amount of the bank's loss.

Taylor pled guilty to the one-count indictment, was sentenced to four months' imprisonment, four months' home detention,[3] and thirty-two months' supervised release. She was also ordered to pay $41,398 in restitution at a minimum rate of $100 per month. As part of her plea agreement, she reserved the right to appeal her sentence if it was imposed as a result of an incorrect application of the sentencing guidelines or in violation of the law. She has now done so.

## II

"We review the trial court's application of the Sentencing Guidelines de novo, but review its underlying findings of fact for clear error." *United States v. Nichols*, 229 F.3d 975, 978 (10th Cir.2000).

■ Taylor contends that the district court erred in its determination that the full $41,398 loss incurred by the bank was a result of jointly undertaken criminal activity for which she was responsible. She argues that she is responsible only for the $10,800 that she admits to having misappropriated, along with the $10,000 she contends represents the total amount her co-

defendant misappropriated prior to June 30, 1998—the date Taylor voluntarily terminated her employment at the bank. Because these figures total only $20,800, if Taylor is correct then under U.S.S.G. § 2B1.1 her base offense level would be increased by only six points, rather than the seven points that are required where the victim's loss exceeds $40,000. If the district court did err in this manner, Taylor should have faced a sentencing range of six-to-twelve months rather than the eight-to-fourteen-month range pursuant to which she was actually sentenced. Because she received an eight-month sentence, such error would not have been harmless. *United States v. Jones*, 235 F.3d 1231, 1238 (10th Cir.2000) ("We will not permit our result to be guided by idle speculation as to the sentence that might be imposed by the district court on remand.").

We conclude that the district court committed no error. The guidelines instruct that a defendant's relevant conduct shall include

(A) all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant; and

(B) in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all reasonably foreseeable acts and omissions of others in further-

**2.** The 2000 edition of the sentencing guidelines was used in computing Taylor's sentence.

**3.** The sentencing guidelines clarify that the court may order a defendant with a criminal history category of I and an offense level of 11 to serve a sentence of imprisonment "that includes a term of supervised release with a condition that substitutes community confinement or home detention ..., provided that at least one-half of the minimum term is satisfied by imprisonment." U.S.S.G. § 5C1.1(d). The district court therefore acted within its discretion when it allowed Taylor to serve four months of her eight-month sentence in home detention.

ance of the jointly undertaken criminal activity,

that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense.

U.S.S.G. § 1B1.3(a)(1). The district court, addressing Taylor's argument that she could not have reasonably foreseen that codefendant Jorgenson would continue embezzling money after Taylor left the bank's employment, determined that the continuation of the criminal enterprise *was* reasonably foreseeable. Not only do we conclude that this finding is not clearly erroneous, but we further note that even if Jorgenson's continuation of the criminal conduct were not reasonably foreseeable, Taylor would still be responsible for the full amount of the bank's loss because she personally "committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused" the acts that led to the loss of the full $41,398. § 1B1.3(a)(1)(A). On June 30, 1998—the day she left her job at the bank—$14,398 was missing from Taylor's drawer; on April 17, 1998, Jorgenson's teller tape showed a loss of $27,000. (Appellant's Br. at 6.) Taylor was therefore directly involved in the embezzlement from both her own and Jorgenson's teller drawers of the $41,398 before she left her job. Even without recourse to the district court's factual determination made pursuant to § 1B1.3(a)(1)(B), therefore, it is evident that Taylor is responsible for her codefendant's criminal conduct pursuant to § 1B1.3(a)(1)(A).

## III

We review a district court's factual findings underlying a restitution order for clear error. *United States v. Olson*, 104 F.3d 1234, 1237 (10th Cir.1997). We review the amount of a district court's restitution order for an abuse of discretion. *Id.*

■ The Mandatory Victims Restitution Act of 1996 ("MVRA") provides that the district court "shall order" a defendant to make restitution to his or her victim, 18 U.S.C. § 3663A(a)(1), for any offense that is, inter alia, "an offense against property under this title, including any offense committed by fraud or deceit," § 3663A(c)(1). The MVRA thus amended the Victim and Witness Protection Act ("VWPA") to make restitution for certain crimes, such as violations of 18 U.S.C. § 656, mandatory.[4] Under the MVRA, not only does the district court lack discretion *not* to order restitution as part of the sentence for a crime like that committed by Taylor, but moreover the court "*shall* order restitution to each victim in the *full amount* of each victim's losses as determined by the court and without consideration of the economic circumstances of the defendant." 18 U.S.C. § 3664(f)(1)(A) (emphasis added); *see also* U.S.S.G. § 5E1.1(a)(1). Given Taylor's concession in her stipulation that $41,398 would be an appropriate figure for restitution, the court did not abuse its discretion in ordering that she repay the bank this full amount of its loss.[5]

---

4. Among the examples of "property offenses" provided in the sentencing guidelines are "theft, embezzlement, [and] fraud." U.S.S.G. § 2B1.1, introductory cmt.

5. Under the MVRA, if the court finds that multiple defendants have contributed to the loss of a victim, "the court may make each defendant liable for payment of the full amount of restitution or may apportion liability among the defendants to reflect the level of contribution to the victim's loss and economic circumstances of each defendant." 18 U.S.C. § 3664(h). There is no indication in the record before us whether the district court apportioned liability between Taylor and her codefendant-who pled guilty and was sentenced before the same court-or whether the

Taylor, in asking us to find that the district court committed clear error in ordering her to pay restitution to the bank, quotes from the VWPA, which required a court to consider "the financial resources of the defendant, the financial needs and earning ability of the defendant and the defendant's dependents, and such other factors as the court deems appropriate" in deciding "whether to order restitution." 18 U.S.C. § 3664(a) (1994) (repealed 1996). The VWPA, of course, is no longer the congressional mandate, and the district court had no discretion in the present case not to order restitution.[6]

The MVRA does require the district court, in determining the *manner* in which restitution will be paid, to consider "(A) the financial resources and other assets of the defendant, including whether any of these assets are jointly controlled; (B) projected earnings and other income of the defendant; and (C) any financial obligations of the defendant; including obligations to dependents." 18 U.S.C. § 3664(f)(2). Though she and her husband have filed for bankruptcy, Taylor is a high school graduate with at least eight years of employment experience. Based on this information the district court adopted the recommendation in the PSR that Taylor will be able to pay restitution if allowed to do so in monthly payments. We conclude that the court did not abuse its discretion in ordering Taylor to pay her victim $100 per month in restitution. *Cf. Olson*, 104 F.3d at 1237 (holding, in a pre-MVRA case, that "[a] restitution order must be consistent with a defendant's ability to pay," but that a defendant's inability to pay at the time of sentencing is not itself a bar); *United States v. Rogat*, 924 F.2d 983, 985 (10th Cir.1991) (noting, in another pre-MVRA case, that a restitution order "will be upheld if the evidence indicates a defendant has some assets or earning potential and thus possibly may be able to pay the amount ordered").

## IV

Accordingly, we **AFFIRM** Taylor's sentence and the district court's restitution order.

---

court made the two jointly and severally liable. We note that the bank should not in any case expect a potential windfall from duplicative restitution payments made by each defendant. *Cf. United States v. Arutunoff*, 1 F.3d 1112, 1121 (10th Cir.1993) (holding, in a pre-MVRA case, that allowing victims to receive more in restitution than they had lost would be at odds with the statute's limited purpose).

6. Taylor committed her crimes and was convicted subsequent to April 24, 1996, the enactment date of the MVRA. She is thus subject to the provisions of the MVRA rather than the VWPA. *See* MVRA, Pub.L. No. 104–132, § 211, 110 Stat. 1214, 1241 (1996) ("The amendments made [to the VWPA] shall, to the extent constitutionally permissible, be effective for sentencing proceedings in cases in which the defendant is convicted on or after the date of enactment of this Act.").